We have a hearing in our next case. Mr. Morris, whenever you're ready. May it please the Court, Andrew Morris, Morvillo LLP, Mr. Hellens, John Bennett and her firm the SEC has established for its administrative enforcement matters. Can you talk up just a little bit? You might be tall and so the microphone is down. Is that better, Judge? Yes, thank you. The complaint challenges the forum itself as unconstitutional because the ALJ in the case serves in violation of the appointments clause. Is that loud enough, Your Honor? Perfect.  And the reason it erred is because the relevant statutory review scheme does not indicate a discernible intent to divest the district courts of jurisdiction over the type of claim in this case, which is a special kind of claim, an appointments clause challenge to the forum itself. And the district court erred by not correctly applying a number of aspects of the controlling law, which is a Thunder Basin line of cases, as articulated and consistently applied by the Supreme Court, not as interpreted by certain lower courts. Every other circuit should consider the question. So far, Your Honor. Right. That's all we have so far in this world. And I'll explain why I think that they have misinterpreted the Thunder Basin cases. Right. And the first point on which they go wrong, and the district court did the same in this case, is the misapplier don't give sufficient effect to the starting point and the foundation and the essential focus of the Thunder Basin cases, which is the type of claim at issue. The type of claim. The Thunder Basin test varies based on the type of claim before the court. The Supreme Court said this in case after case after case, and indeed this court emphasized that point in National Taxpayers Union v. Social Security Administration, where the court noted in its footnote three that the type of case is critical. Indeed, Judge Wilkinson concurred primarily to emphasize that point, that we have to look at the type of case and in particular we have to look at the effect of delayed review on the type of case. It varies by type of case. And that's how this court has approached. It was not a direct analysis, obviously, but that's how this court has viewed the Thunder Basin test to date. Now, this case, as I said, involves not just a constitutional claim, but a special kind of constitutional claim, an appointments clause claim. Of course, the case that addresses that most closely is Free Enterprise Fund v. PCAOB. And several teachings from that have been misunderstood or overlooked or just not given any effect at all in the district court opinion in this case and in the recent lower court cases that the court has seen. And let me talk about two of them. The first is that Free Enterprise makes very clear, and this is consistent with the structural cases that we cite in our brief, says repeatedly that the type of claim here is a claim for injunctive relief. It's forward-looking injunctive claim. The court says, for example, it adds a footnote two to bring in some other authorities and it says the nature of this claim is, quote, to prevent entities from acting unconstitutionally, close quote. By nature, it's an equitable claim for forward-looking relief. Sotomayor, can you help me understand, though, if we make the distinction that you're asking us to make, what couldn't be construed as a kind of constitutional claim? I mean, are there any claims that can't or are there many claims that can't reasonably be dressed up in constitutional clothing? Well, sure, Judge Duncombe. I mean, most kinds of constitutional claims are not structural appointments clause claims. For example, the claim of Well, they may not be appointments clause claims, but I'm not quite sure why appointments clause claims get carved out of the rubric of constitutional claims generally. There are a couple reasons. The division in the Supreme Court's cases is between challenges to the process, threshold challenges to the process, Matthews v. Eldridge, McNary v. Haitian Relief Fund, Free Enterprise Fund, and indeed our case. The cases that are not challenges to the process, they still might raise constitutional questions. They might even be facial challenges to substantive statutes that apply to the primary conduct that are enforced by the agency. Those are Thunder Basin v. Reich and Elgin v. Department of Treasury. That's the fundamental distinction in the cases, and that's the distinction that this Court does not have. Process as opposed to, so for example, ultraviruses action by an agency, that wouldn't qualify? Because it's not technically process. Well, I'm not sure that the courts have addressed that, Judge Duncombe. We know that And the reason I ask is that I'm trying to ascertain some limiting principle to your argument, because that has to be a problem. This kind of slippery slope or opening the floodgates argument has been made repeated in these cases, and the answer is that the Supreme Court has established that there's a special kind of claim, and it's unusual because it is a challenge to the process, and that's the only way to distinguish among the five Supreme Court cases. That's the only way to organize the cases is whether it's a challenge to the process. That's why, for example, in Free Enterprise Fund, when it's talking about the nature of the claim, it cites McNary v. Haitian Relief Fund, which is not a pre-enforcement case. It's an ongoing enforcement case, but it is a challenge to the process. It's a slightly different kind, so it gets a CF, but that's the nature of the cases. Those are not the other kind of constitutional claims you mentioned, Judge Duncan, are not challenges that the very regime itself is unconstitutional from the start. And so, at least as to our case, and we address this later in our brief, the slippery slope problem is contained in our case because there are strong fences around this kind of case. There might be others. Another example is Double Jeopardy. Double Jeopardy is a historical category of case where there is a right to forward-looking prospective relief. There is a right not to go to trial. That is a well-established right. That has not created a floodgate problem. It's an established category of cases where you get the same kind of prospective relief in this case. So we're not asking for anything unique. It's parameters are pretty well established, though, and I thought the Supreme Court in Elgin told us not to try to parse constitutional claims for the slippery slope reason. Your Honor, Elgin is a completely different kind of case because it is a challenge to a substantive law there, an employment-related law, that the agency routinely administered. It was not a threshold challenge saying we should not be involved in this entire process because the process itself is unconstitutional. There's a lot of different kinds of constitutional claims, and, Your Honor, as you've indicated, any defendants worth their salt can come up with some kind of claim that they call a constitutional claim. That's why I emphasize this is a special type of claim, and the language in Free Enterprise Fund is quite emphatic. It also says, in addition to what I said, that the purpose of this claim, this claim gives the litigant a right to ensure that the law, quote, will be enforced only by a constitutional agency, close quote. That's not Elgin, Your Honor. Elgin is just a constitutional argument that some statute that applies to the primary conduct of the plaintiff is unconstitutional. Those are the more common kind of constitutional claims. This is a special claim, as Free Enterprise says. And Free Enterprise goes on and makes another point that's been overlooked, which is because of the type of claim, there's an immediate right to bring it. The Court calls it a here-and-now injury being subject to an unconstitutional regime, and there's a critical discussion in there where if I make one point today, this is the point I think is most important, and that is when Free Enterprise discusses the kind of claim, it says that there's an immediate right so that the plaintiff in that case, which of course was an accounting firm challenging the PCOB, it's unconstitutional, didn't even have to challenge a rule to get into court. That's significant. The critical factual distinction that you, I think, have ignored in your discussion is that there hadn't been any enforcement action, there hadn't been anything filed there, unlike this case, right? Yes, absolutely. And so there was this whole argument about how are they going to challenge this structural problem? That's been the number one distinction. They have to vet the farm. Sorry? Yes, Your Honor. So I'm not sure I see how you get past that here. Well, here's a couple reasons just in Free Enterprise itself. The vet the farm comes up later in the opinion, batting aside or addressing, but the threshold point is, as I recall it as well, the appellant, there would have had to have been an affirmative illegal action. There would have had to be an undertaking of the risk of a sanction to place oneself in noncompliance in order to initiate a proceeding, which is not the case here. I think that's the question. Understood. There would not have been, Your Honor. There would not have been that requirement. First of all, I think we need that in this case because it requires Ms. Bennett to vet the farm by litigating rather than settling. Well, the process has already started is the distinction. I understand. The process is underway. To address your question directly, Free Enterprise says, before it gets to the vet the farm discussion, which is an alternative lead discussion, it says the party need not even challenge a rule, which it could have done to create a vehicle to challenges. Challenging a rule does not risk a sanction. That's a critical, critical paragraph in Free Enterprise. Challenging a rule does not require risking a sanction. The point of that paragraph is that to challenge the entire regime, because it's a separate claim, a plaintiff need not initiate individualized discussion. Challenging a rule is not vetting the farm. It's just creating an individualized lawsuit. That's a critical paragraph passage in Free Enterprise. I hear what you're saying, but I'm not understanding the significance of what you're saying. Well, it's significant because the court, there was a way for the plaintiff in that case to create litigation that teed up the Employment Clause issue by challenging a rule. That did not require taking on risk. The plaintiff could have challenged it without taking on risk. There's no more risk to Ms. Bennett. Ms. Bennett is already at risk. The risk is present. There would have had to have been some affirmative action in Free Enterprise to create immediate risk. I mean, that's part of the distinction. But, Your Honor, not an immediate action that creates risk of sanctions. Challenging a rule does not create risk of sanctions, and that's the first discussion in Free Enterprise. And the courts have skipped over that, and the district courts skipped over it. So bet the farm is an alternatively response to a government argument. But because the claim was an immediate right to seek an injunction, the statement that the plaintiff didn't even have to challenge a rule indicates that there was an immediate right to sue no matter what. That's why that addresses the bet the farm issue, that challenging a rule does not involve betting the farm. And that is, I think, the most critical point of the morning. As Your Honor has pointed out, I think it's been overlooked in the opinions to date, and it leads to a critical misreading of Free Enterprise. And the second half of my point about how to read that passage in Free Enterprise is when the court says that the plaintiff need not even challenge a rule, it cites one case, and the case it cites is McNary. As I said, McNary is not a pre-enforcement case. It's a case that involves the same kind of claim, essentially, because it's a challenge to the process. But it is an ongoing enforcement case. But in McNary, you had aliens who would have had to voluntarily surrender themselves for deportation. That's a pretty huge risk. But it is still a ongoing enforcement case. It is not a pre-enforcement case. The discussion we're having about Free Enterprise is whether it's limited to pre-enforcement. The case that Free Enterprise chooses to cite when it's discussing why this claim can go forward immediately is McNary, which is not a pre-enforcement case. If Free Enterprise were limited to pre-enforcement, they would not cite a case that involves ongoing enforcement. I think a close reading of Free Enterprise, or a plain reading of Free Enterprise, the fact that it cites McNary I think rules out limiting Free Enterprise to a pre-enforcement context. That's why it governs our case as well. In fact, the argument that one has an immediate right to an injunctive relief beforehand and you lose that right when the agency comes after you, that seems kind of backwards. In fact, I think it is backwards, and that's why applying the Thunder Basin test correctly shows that there's district court jurisdiction. In applying the Thunder Basin test, I just explained what I think Free Enterprise governs directly. Thunder Basin makes the same distinction. It cites McNary and Matthews for cases that can go forward, both cases in the administrative process but challenging the process on constitutional grounds. Can you bring your appointments clause claim within the process, in the context of the process? It's already ongoing? One can assert that claim in certain ways, but you can't get meaningful relief for that claim. Why is that? Because by definition, as I just indicated from Free Enterprise Fund, which discusses it most closely, the claim by its nature is a claim for forward-looking relief. It's a right to be free from having the law enforced by an unconstitutional agency. And if you assert it within the process, you're losing that right. McNary has language to the same effect. You don't have to pursue an unconstitutional process to raise an argument that that process is unconstitutional. But people have to go through proceedings that they can later challenge, and the Supreme Court says that's just the price we pay for living in a society governed by laws, that we sometimes have to endure a process where we are eventually vindicated by getting relief. Absolutely right. That's true in many cases, and that's the floodgates problem. But there are numerous exceptions to that rule. That's why there's interlocutory appeal statute. Tilton and Chow, cited by the district court, talk about this. And they say oftentimes you can't bring that, but there are many exceptions. And the simplest answer to your question, Judge Duncan, is that's why the whole Thunder Basin test exists, because if your answer were always the case, if there were never an opportunity to raise this kind of claim, you wouldn't need the whole Thunder Basin line of cases, which the Supreme Court has carefully laid out and consistently applied. And one final error in applying the Thunder Basin case that I want to point out is that the district court made an outright error in understanding that the word eventual connected with review comes from the Supreme Court. We explained this somewhat in our brief. And that word, in fact, was introduced by one of the lower courts in a lower court opinion. The Supreme Court does not use the word eventual in talking about review, and that's critical because changing meaningful review, which means you get the same relief at the end that you could get now, takes the type of case out of the Thunder Basin framework and guts that framework. Ms. Bennett is entitled to the same. Ms. Bennett could not get, at the end of the appellate process, an injunction against the administrative process, so she cannot get meaningful relief by, as you indicate, Judge Duncan, pursuing. I see my time is up. Pursuing her claim through the administrative process. Thank you very much. Thank you. Patterson? Patterson. May it please the Court, Melissa Patterson for the Securities and Exchange Commission. The district court here and now the four courts of appeals to consider the issue correctly decided that Congress intended that the type of claim Ms. Bennett brings here to be channeled through the statutory review provision. And those provisions give courts of appeals exclusive jurisdiction at the end of administrative proceedings after the issuance of a final and adverse order. Could you address at the outset what his principal point seemed to be? Sure. I think the principal point is that separation of powers claims are special and that they can't be remedied at the end of the process. And that's simply not true. And I think looking at the Supreme Court's separation of powers precedent, the very cases they cite, like the Edmund case, which was a claim that the military judge presiding over the trial was unconstitutionally appointed in violation of the appointments clause, they didn't get to jump the line. They got a final conviction. They appealed it, and the Supreme Court found vacatur and a remand for a new hearing before a properly appointed officer to be a legitimate remedy for an appointments clause violation. And the front-end violation there, the front-end relief, the front-end relief sought there was injunctive? No, Your Honor, but they were raising appointments clause issues throughout that process. I understand that. Or at least specifically the question that appeared to be focused on at the end is that the nature of the relief sought is by definition prospective. So the argument goes that it can't be awarded retrospectively. I think that was what I understood to be the argument as crystallized. It's like Humpty Dumpty. You can't put it back together. But I take that point to be the inquiry here. No, no, just that question. What's wrong with that argument? Yes. Is that the nature of an appointments clause, the claimed right is not an immunity from suit. The claim is to have a properly appointed person preside over your hearing. So this is not like double jeopardy. This is not like a claim of immunity from suit at all. Sounds like it. Well, Your Honor, the D.C. Circuit and the Darkeese decision went through at some length and says the fact that they attack the process rather than the result doesn't mean that you get to create an exception from an otherwise exclusive scheme. I completely understand that. And maybe I'm just missing the connection. I mean, I grasp what you're saying about the nature of the claim. What I am focusing on specifically in my question is the nature of the relief. And I don't think the relief has to be precisely the same in order for it to be a meaningful remedy. The question is, is there a meaningful remedy at the end of the day? So it doesn't matter you're saying that the relief sought is injunctive going forward. It does not, Your Honor. And if it did. And your authority specifically for that would be? The Hill decision, the Tilton decision, the Darkeese decision, and the Baber decision. These are the four courts of appeals that have engaged with precisely that question and said, yes, you're going to have to go through your proceeding. And you are saying that that proceeding is unconstitutional in some way. But can we adequately, if you're right about the appointments clause, can a court adequately remedy it? It might not be precisely the same relief that you want at the earlier stage, but can we offer you a remedy? So if you're just picking among the Supreme Court cases, you don't have authority for that proposition. You don't have authority, maybe he doesn't have a strong authority either. But is that correct? We just want to know where the bidding lies. I don't think the Supreme Court has addressed this point particularly. But the four courts of appeals applying the guidance from Elgin, from Free Enterprise, Thunder Basin, have all concluded that by just tacking on a claim for prospective injunctive relief is not a way to short circuit the exclusive statutory review scheme. And, again, there's this idea in the briefs and in the presentation this morning that there's no way to remedy, that it is a humpty-dumpty problem. There's just no relief that can be offered at the end of the day. And that is just not true. The Supreme Court has found remedies for appointments clause violations by telling the government, go back, do it again, do it in front of a properly appointed officer. And I do understand. I mean, I certainly take your point, and that is my understanding of what the courts of appeals to have considered that have decided. I'm just trying to understand the context in which we get to define the relief that a party seeks. Do you see the difficulty that I'm having? We have to recharacterize the relief sought to fit the framework of your analysis. Is that not a fair? I think, I mean, can I try responding in a different way, which is to look at the standard oil line of cases? I'm not sure. Well, let me give it a try. FTC v. Standard Oil was a case where the litigants, before the administrative proceeding, were saying, we should not have to endure this proceeding at all. And the court said, listen, we understand that just vacating this at the end of the day is not going to give you the relief you want, because the relief you want is to not have to go through this process at all. And the Supreme Court said the expense and burden of litigation is inadequate to circumvent the statutory review scheme here. I think you have to think about what Congress intended. Did Congress intend people to be able to go to district court and get an injunction and halt administrative proceedings in their tracks, or did they intend you to have to wait to the proceedings, even if the proceedings you think are burdensome, even if you think there's some fundamental defect in what's going on? And I think if plaintiffs could just stick a claim for prospective injunctive relief onto their attempt to get into district court and say, well, now I've asked for a type of relief that can't possibly be awarded to me at the end of the day, then there would be no limiting principle to the way that people could get into district court. I think I understand. What you're essentially saying is it doesn't matter how they characterize the relief sought. What they're really asking for is something else, and that is something that the district court, at least, is precluded from giving. We're not letting them frame the nature of the relief when it's wearing different, just because it's dressed up differently. I think that's right. I think the Supreme Court in Algin, in talking about and refusing to parse among the constitutional claims, I think that line of analysis would also apply to parsing among the types of relief asked for. There often could be a claim for injunctive relief. You say, listen, this whole statute is unconstitutional in its face. Give me an injunction to prevent this unconstitutional statute from dragging me through administrative proceedings. The Supreme Court refused to carve out facial constitutional claims, said we're not going to create a jurisdictional rule based on the nature of the constitutional claim. And I think if the argument here is we get to carve out a special jurisdictional rule, not just because this is a really special type of constitutional claim, but also because we've asked for this very particular kind of relief, that runs afoul of the Supreme Court's instructions in Algin about not carving out. And I don't think there's any claim here that this statutory scheme is not supposed to be exclusive, that it's not supposed to preclude district court actions in general. The only claim here is that these types of special structural separation of powers claims should, the court should infer an exception to that scheme. And again, in Algin, they refused to do that. They said, listen, there's nothing in the statutory text that makes us think Congress wanted you to be able to put a facial constitutional challenge in your complaint and be able to circumvent the review scheme that we have set out. If the court has no further questions, we're satisfied to submit on the brace. So maybe you can talk to me a little bit about Judge Droney's dissent in the Tilson case. And we haven't talked much about the Thunder Basin fact today, but maybe. And I thought he made a fair point about the risk of the Thunder Basin facts collapsing into one procedural test. Your Honor, we would, of course, point to the majority. Yeah, yeah, yeah. In Tilton. We like the majority, but they did better. He likes the dissent. We do, Your Honor. You know, I think this court and the National Taxpayers Union case where this court itself was applying the Thunder Basin did indicate that it thought that Thunder Basin had primarily looked to the meaningfulness of judicial review. And, of course, the Seventh Circuit also thought that that was the most important part. You do see evidence of that in Elgin where they said, well, we don't really care if the agency can address the constitutional claim. You know, so I don't think the court needs to go that far as the Seventh Circuit went and said, all we need to look at really is meaningful judicial review. As the D.C. Circuit said, there are, we think, all the three guideposts from the Thunder Basin test, the wholly collateral, the outside the agency expertise. For example, the wholly collateral seems like a joke because, I mean, and I've argued that position in one, but it does seem really like a joke, right, because this is wholly collateral. You can resolve, you do get meaningful review. I don't think so. And if we could compare and contrast the facts in Free Enterprise to here, I think it helps show the difference why that one was wholly collateral and this claim is not. Well, can we start with the proposition with which I think you have to agree, and that is there's no definition. We've gotten no guidance, really, on what is wholly collateral. There certainly is not a spelled out test, and that's why I think you have to look. That's what guidance, yeah, that was what I was saying. Yes, but I think looking at the facts of the cases. So in Elgin, which, of course, postdated Free Enterprise, the Supreme Court explained, like, listen, if your constitutional challenge is really the vehicle by which you're seeking to prevail against the agency, even if it's not intertwined with the merits, it's not wholly collateral in the sense, and remember in Free Enterprise where the court said that claim is wholly collateral, there they were challenging the existence of the board, and they were not in the pipeline to judicial review, and they were never necessarily going to be in the pipeline to judicial review under the special scheme, unless they sort of ginned up a challenge, a Trojan horse challenge to a rule, or undertook a new violation of the securities laws, bet the farm. So where you have a claim, where you're not in the pipeline to judicial review already, you're not seeking to prevail against the agency. This is not a vehicle, an affirmative defense in your underlying administrative proceedings. I'm sorry, the question, though, becomes wholly collateral to what? It has to exist with reference to something, and it seems to me that it either strikes far too broadly or not at all, because any time there is an SEC investigation, nothing brought in the context of in response to generated by under your theory is wholly collateral. I think if there's a proceeding that's going to get you judicial review at the end of the day. Then there's no independent meaning to wholly collateral. I don't, but again, Your Honor, if what you're challenging is not already within the pipeline, like if you have a free enterprise challenge where you're not already within the scheme, it makes sense to say, hey, that challenge is wholly collateral to the scheme. So it's just another way of describing the same thing, which is what my original problem was. It's not a three factor. Well, Your Honor, I don't know that this. Because they both rely on the same thing. I think they may well overlap. I think all the three of the guideposts. They overlap. They're the same thing. I don't know. Well, I guess here's the point. I don't know that in every case they're going to perfectly overlap. But I think they all do get at the heart of the inquiry, which is did Congress intend this type of claim to go through the statutory review process, or would Congress have wanted you to be able to launch a parallel district court attack on whatever is happening? Well, but you go back to the is it pre-enforcement distinction. I really am having trouble seeing the instance in which it wouldn't be wholly collateral once there's an action. And I have the same skepticism about agency expertise being brought to bear on the question presented, because I'm not quite sure what expertise the SEC brings to a challenge to the appointments cost, for example. So there are two key things to realize there, Your Honor. First, in Elgin, the Supreme Court clarified that the inquiry under agency expertise also extends to whether the agency might rule for you on the merits. And here, of course, this action is still pending before the commission. The commission could rule for Ms. Bennett on the securities law violation, obviating the need for any judicial review. But it's not agency expertise brought to bear on the question presented. It could be brought to bear on the entire challenge. That could obviate the need for judicial review. And the second point here is that this is not the type of challenge where the commission is going to have nothing to say about the role of its own ALJs in its own administrative processes, which, of course, would go to the merits of an appointments cost challenge. So it's true that the agency doesn't have any specific expertise on the appointments cost, but it sure does have expertise on the ways in which its ALJs operate within its scheme. So I point this Court to the Lucia decision in the D.C. Circuit. This is where someone properly awaited the termination of commission proceedings and then brought their appointments cost challenge in the D.C. Circuit. And there you had a commission decision that discussed at length the role and authorities of the ALJs within its process. And the D.C. Circuit was able to look at the merits of the constitutional claim against the backdrop of an agency explaining how those ALJs were actually used. And I do want to emphasize, no one is saying that Ms. Bennett can't get review of her constitutional claims. The only question here is at what point she gets review and in what court. Thank you. Are there no further questions? Thank you, Your Honor. Thank you. My friend cited the Edmund case. I know that case there was no reference to any injunction being sought. That issue didn't come up. Can I ask you this question about injunction? If you brought exactly your claim here, but you didn't ask for injunctive relief, but you said that you simply wanted a judgment in your favor, a declaration, if you will, not an injunction, would your claim then fail? Your Honor, I would think that would be a different type of claim, which is the starting point. I don't think that the validity of your claim can rise and fall on the type of relief, because it seems to me a declaration would be as satisfactory to you as an injunction. Well, Your Honor, it's the language of the Supreme Court of the United States and Free Enterprise Fund, the PCLB, and citing other cases that the nature of this Appointments Clause claim is a forward-looking prospective claim. But were they talking about the kind of claim, or were they talking about the kind of remedy? Well, they do not make a distinction. They bind it up. Well, they had to be talking about the kind of claim, didn't they? I mean, if you've got a ruling, a favorable ruling, you can shop that around anywhere. That ties to the here and now. I mean, the district court's going to listen to it. Yes, Your Honor, and there wouldn't be standing if that weren't the type of claim. I mean, the type of claim is to be free from – So it doesn't really make any difference to you whether – What I was talking about was the constitutional basis for your claim. That's the type it is. Are we on the same page on that? Under Supreme Court opinions, these things are bound up together. An Appointments Clause claim is a claim to be free from being subjected to an unconstitutional process. You're saying the ALJ is unconstitutional. Yes, Your Honor. You're saying it's a star chamber proceeding. Well, it's unconstitutional, yes, Your Honor. It is. It's not having authority to be doing anything. That's what you're saying under the Constitution. If you get a ruling to that effect, you can shop it wherever you want to try to shop it. And Judge Mott's address, you're hypothetical. You don't need an injunction order. I mean, I guess – not seeking an injunction, Judge King. I guess one could do that. It would be pointless. I'm not sure why you'd bring a claim and not wanting – Well, because that's what – that would be the relief that your client would want. Presumably, what a client would be interested in is vindication of his or her right not necessarily making the law better for the general populace going forward. So I think the question is take injunctive relief off the table. If this – does it matter? If the SEC finds that the ALJ process is constitutionally flawed and sends this case back to – for whatever rehearing is appropriate under the circumstances and didn't say anything about an injunction, why should that – Well, it's not just one phrase. There's a substantial body of law that says, and we discussed it at length in briefs, that this kind of claim is a special – it's prospective, it's forward-looking, it advances a couple of interests. It advances the individual's right not to be subjected to an unconstitutional process, not to have a statement later that it was unconstitutional, and it also advances the structural interest in a constitutional government. And so the nature of the claim, and we discussed this in some detail in our briefs, the structural claim and the very strong language repeated in Free Enterprise Fund, this claim is inherently a claim to be free from being subjected to an unconstitutional process. It is like a – in your view, it's like a double jeopardy claim. It has the same effect, absolutely, Your Honor. And that's another category where the law – again, there are walls around that case, and that has not opened the floodgates. And this is the same kind of category, and it is unavoidable that that is the right that my client has not to be subjected to that claim. I mean, she can't – I apologize, I see my time is running out. You can finish your sentence. She can't get that if the case goes through the administrative process, which is the point of the whole claim, and then the court of appeals says, oh, you know what, we never should have subjected you to that in the first place. For that reason, I ask the Court to reverse the district court and hold it has jurisdiction over the complaint in this case. Thank you very much. We will come down to these lawyers, and then we'll take a short recess.
judges: Diana Gribbon Motz, Robert B. King, Allyson K. Duncan